E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BRITTNEY M. HARRIS (Cal. Bar No. 294650)
Assistant United States Attorney
Deputy Chief, International Narcotics,
Money Laundering, and Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0488
    Facsimile:  (213) 894-0141
    E-mail:     Brittney.Harris@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>PETICUB PHARMACY CORPORATION, a<br>California corporation doing<br>business as "Peticub Pet<br>Pharmacy,"<br><br>       Defendant. | No. CR 23-00375-DMG-2<br><br>PLEA AGREEMENT FOR DEFENDANT<br>PETICUB PHARMACY CORPORATION |

    1.   This constitutes the plea agreement between Peticub

Pharmacy Corporation, doing business as Peticub Pet Pharmacy,"

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authority.

///

1

<u>DEFENDANT'S OBLIGATIONS</u>

2      2.    Defendant agrees to:

3          a.    At the earliest opportunity requested by the USAO and

4    provided by the Court, appear and plead guilty to counts one and

5    fifteen of the indictment in <u>United States v. Rabin Shaoulian et al.</u>,

6    CR No. 23-00375-DMG-2, which charges defendant with conspiracy to

7    distribute and possess with intent to distribute tapentadol, in

8    violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C); and conspiracy

9    to (1) introduce or deliver for introduction into interstate commerce

10   adulterated and misbranded drugs, and (2) receive adulterated and

11   misbranded drugs and deliver or proffer for delivery to another, in

12   violation of 18 U.S.C. § 371, 21 U.S.C. §§ 331(a) and (c), 333(a)(2).

13         b.    Not contest facts agreed to in this agreement.

14         c.    Abide by all agreements regarding sentencing contained

15   in this agreement.

16         d.    Appear for all court appearances, surrender as ordered

17   for service of sentence, obey all conditions of any bond, and obey

18   any other ongoing court order in this matter.

19         e.    Not commit any crime; however, offenses that would be

20   excluded for sentencing purposes under United States Sentencing

21   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

22   within the scope of this agreement.

23         f.    Be truthful at all times with the United States

24   Probation and Pretrial Services Office and the Court.

25         g.    Pay the applicable special assessments at or before

26   the time of sentencing unless defendant has demonstrated a lack of

27   ability to pay such assessments.

28

1          <u>THE USAO'S OBLIGATIONS</u>

2          3.    The USAO agrees to:

3                a.    Not contest facts agreed to in this agreement.

4                b.    Abide by all agreements regarding sentencing contained

5    in this agreement.

6                c.    At the time of sentencing, move to dismiss the

7    remaining counts of the indictment as against defendant.  Defendant

8    agrees, however, that at the time of sentencing the Court may

9    consider any dismissed charges in determining the applicable

10   Sentencing Guidelines range, the propriety and extent of any

11   departure from that range, and the sentence to be imposed.

12               d.    At the time of sentencing, provided that defendant

13   demonstrates an acceptance of responsibility for the offenses up to

14   and including the time of sentencing, recommend a two-level reduction

15   in the applicable Sentencing Guidelines offense level, pursuant to

16   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

17   additional one-level reduction if available under that section.

18               e.    With respect to counts four and fifteen, recommend

19   that defendant be sentenced to a fine of $10,000 on each count, for a

20   total fine of $20,000.

21          <u>CORPORATE AUTHORIZATION</u>

22          4.    Defendant represents that it is authorized to enter into

23   this agreement.  On or before the change of plea hearing pursuant to

24   this agreement, defendant shall provide the USAO and file with the

25   Court a notarized legal document(s) certifying that defendant is

26   authorized to enter into and comply with all of the provisions of

27   this agreement.  Such legal document(s) shall designate a company

28   representative who is authorized to take the actions specified in

this agreement, and shall also state that all legal formalities for
such authorization have been observed.

ORGANIZATIONAL CHANGES AND APPLICABILITY

5.    This agreement shall bind defendant, its successor entities
(if any), parent companies, and any other person or entity that
assumes the liabilities contained herein ("successors-in-interest").
Defendant, or its successors-in-interest, if applicable, shall
provide the USAO and the United States Probation Office for the
Central District of California with reasonably prompt notice of any
name change, business reorganization, sale or purchase of assets,
divestitures of assets, or similar action impacting their ability to
pay the file or affecting this agreement.  No change in name, change
in corporate or individual control, business reorganization, change
in ownership, merger, change of legal status, sale or purchase of
assets, or similar action shall alter defendant's responsibilities
under this agreement.  Defendant shall not engage in any action to
seek to avoid the obligations and conditions set forth in this
agreement.

RESPONDEAT SUPERIOR

6.    The parties stipulate and agree that under well-established
principals of corporate liability and respondeat superior, as these
principals apply in this case, defendant is liable for the actions of
its agents and employees.  New York Central and Hudson River R.R. v.
United States, 212 U.S. 481, 495 (1909); United States v. Beusch, 596
F.2d 871, 877-878 (9th Cir. 1979); United States v. Hilton Hotels
Corporation, 467 F.2d 1000, 1004-07 (9th Cir. 1972).

<u>NATURE OF THE OFFENSES</u>

7.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to distribute and possess with intent to distribute tapentadol, in violation of 21 U.S.C. §§ 846, 841(a)(1) the following must be true: (1) from a date unknown and ending on or about May 5, 2022, there was an agreement between two or more persons to distribute or possess with intent to distribute tapentadol; (2) defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose; (3) defendant acted outside the scope of professional practice; and (4) defendant acted without a legitimate medical purpose.

8.    Defendant understands that for defendant to be guilty of the crime charged in count fifteen, that is, conspiracy to violate 21 U.S.C. §§ 331(a) or (c) and 333(a)(2), in violation of 18 U.S.C. § 371, the following must be true: (1) there was an agreement between two or more people to violate 21 U.S.C. §§ 331(a) or (c); (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

9.    In order to violate 21 U.S.C. §§ 331(a), 333(a)(2), the following must be true: (1) a person introduced or delivered for introduction into interstate commerce; (2) any drug; (3) that is adulterated or misbranded; and (4) the person acted with an intent to defraud of mislead.

10.    In order to violate 21 U.S.C. §§ 331(c), 333(a)(2), the following must be true: (1) a person received in interstate commerce; (2) any drug; (3) that is adulterated or misbranded; (4) and

delivered or proffered delivery of that drug for pay or otherwise; and (5) the person acted with an intent to defraud or mislead.

### PENALTIES

11.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C) is: 5 years' probation; a fine of $5,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371, 21 U.S.C. §§ 331(a), (c), 333(a)(2) is: 5 years' probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.[1]

13.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 5 years' probation; a fine of $5,500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

14.  Defendant understands that if the Court imposes a term of probation, that the statutory mandatory minimum term of probation is one year.

15.  Defendant understands that the conviction in this case may subject defendant to various collateral consequences.  For example, if defendant holds any regulatory license or permit, the conviction in this case may result in the suspension or revocation of such

---

[1] The applicable statute for the fine pursuant to count fifteen is 18 U.S.C. § 3571(c)(3).

license and/or permit.  Defendant understand that unanticipated consequences will not serve as grounds to withdraw defendant's guilty pleas.

<u>FACTUAL BASIS</u>

16.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all times relevant to this plea agreement, defendant was doing business as Peticub Pet Pharmacy ("defendant" or "Peticub"), which was authorized by the United States Drug Enforcement Administration ("DEA") to dispense controlled substances, and had a pharmacy location in Los Angeles, California.  Rabin Shaolian ("Shaoulian") was a pharmacy technician licensed by the State of California and operated Peticub.  As the operator, employee and agent of Peticub, Shaoulian was the sole manager, held the keys to Peticub's pharmacy location, handled payroll and hiring, managed Peticub's bank accounts, accounting, ordering of drugs and other supplies for the business, among other duties.  The only other Peticub employee was a part-time pharmacist, who was hired by Shaoulian.  From a date unknown and continuing until on or about May 5, 2022, in Los Angeles County, within the Central District of

7

1   California, and elsewhere, Shaoulian engaged in an illicit pill
2   trafficking business, which was operated, in part, through Peticub.
3       Specifically, Shaoulian purchased tapentadol (a schedule II
4   controlled substance) and counterfeit alprazolam (a schedule IV
5   controlled substance) from a Nevada-based illicit pill manufacturer
6   and distributor, Christopher Housley ("Housley"), who was not
7   licensed by the DEA or the Food and Drug Administration ("FDA") as a
8   pharmaceutical manufacturer.  Shaoulian knew that Housley sourced his
9   tapentadol pills from India and Shaoulian knew that Housley
10  manufactured his own counterfeit alprazolam pills.  Along with
11  purchasing thousands of tapentadol and counterfeit alprazolam pills
12  at a time from Housley, Shaoulian also purchased from Housley empty
13  pill bottles, counterfeit alprazolam labels, and tamper proof seals.
14  Housley, from a location in Nevada, then mailed the bulk tapentadol
15  and/or counterfeit alprazolam pills, empty pill bottles, counterfeit
16  alprazolam labels, and tamper proof seals to defendant's pharmacy
17  location, in Los Angeles.  Shaoulian then made counterfeit bottles of
18  alprazolam by filling the empty pill bottles with the counterfeit
19  pills, affixing false and misbranded labels, and sealing the bottles
20  with the tamper proof seals.  Shaoulian then sold bottles of
21  counterfeit alprazolam and tapentadol pills on the black market to
22  customers throughout the United States directly or through electronic
23  orders that Shaoulian received from co-conspirators.  Shaoulian's
24  customers did not present or have prescriptions authorizing the
25  dispensation of alprazolam or tapentadol pills.  From Los Angeles,
26  Shaoulian would mail the pills directly to customers throughout the
27  United States and would charge customers through defendant's point of
28  sale system.

1    On June 21, 2021, Housley texted Shaoulian a series of
2  photographs that depicted six bottles of 2 m.g. strength alprazolam
3  bearing the logos of drug manufacturers Sandoz, Dava, and Actavis,
4  along with photographs of three types of pills, which resembled
5  alprazolam pills sold by those three pharmaceutical manufacturers.
6  Housley told Shaoulian that the white pills, counterfeited to
7  resemble the Sandoz brand alprazolam, were his "best seller."
8    The following day, Shaoulian ordered from Housley 5,000 of the
9  white counterfeit alprazolam pills, along with empty bottles, false
10  labels, and tamper proof seals, for $3,250.  Housley subsequently
11  shipped the pills, bottles, labels, and tamper proof seals from
12  Nevada to defendant at Peticub's pharmacy location in Los Angeles,
13  which was received on June 28, 2021.  Shaoulian subsequently filled
14  the pill bottles with the counterfeit alprazolam pills, affixed false
15  and misbranded labels on the bottles purporting that the bottles
16  contained 100 2 m.g. alprazolam pills manufactured by Sandoz, and
17  sealed the bottles with tamper proof seals.  At all relevant times,
18  Shaoulian knew that the pills were not authentic alprazolam pills
19  manufactured by Sandoz and knew that they were counterfeit pills that
20  Housley manufactured himself.
21    On June 30, 2021, Shaoulian messaged co-conspirator 2 a
22  photograph of a finished counterfeit alprazolam bottle and later that
23  day, co-conspirator 2 brought Shaoulian an order for 500 2 m.g.
24  alprazolam pills for customer L.T., located in Houston, Texas.  L.T.
25  did not present to co-conspirator 2 or Shaoulian with a prescription
26  authorizing the dispensation of alprazolam.  Shaoulian charged L.T.'s
27  credit card using defendant's point of sale system and mailed 500
28

1  counterfeit alprazolam pills (purporting to be manufactured by

2  Sandoz) from Los Angeles to L.T. in Texas.

3      Shaoulian purchased counterfeit alprazolam pills, bottles,

4  labels and tamper proof seals 12 more times from Housley during the

5  conspiracy period, totaling at least 44,200 counterfeit alprazolam

6  pills, which Housley shipped from Nevada to defendant's pharmacy

7  location in Los Angeles.  Shaoulian then re-sold (often using

8  defendant's point of sale system) or proffered to others for sale

9  those counterfeit alprazolam pills, intending to defraud and mislead

10 the customers into believing that the pills were authentic alprazolam

11 pills manufactured by Sandoz, when in fact, Shaoulian knew they were

12 not.  During the conspiracy period, Housley detailed his alprazolam

13 pill pressing methods to Shaoulian, including the specific dyes that

14 Housley used and how he used a coffee grinder to make the pill color

15 more even.  Shaoulian told Housley that he did not care what the

16 pills looked like or if they tasted "too chalky" and continued

17 purchasing them by the thousands.

18     Shaoulian also purchased thousands of tapentadol pills from

19 Housley, which were shipped to defendant's pharmacy location and

20 Shaoulian then re-sold them to customers.  For example, on August 24,

21 2021, Shaoulian purchased 1,500 tapentadol pills from Housley for

22 $1,000.  From Nevada, Housley shipped those pills to defendant's

23 pharmacy location in Los Angeles, which Shaoulian then re-distributed

24 to customers on the black market without prescriptions.  Shaoulian

25 purchased tapentadol pills 11 more times from Housley during the

26 conspiracy period, all of which were shipped to defendant's pharmacy

27 location, totaling at least 30,700 tapentadol pills.

28

For all counterfeit alprazolam and tapentadol transactions, defendant did not dispense the pills pursuant to any prescriptions and was not authorized by any medical professional to dispense those drugs.  For all transactions, defendant acted outside the scope of professional practice and without a legitimate medical purpose.

SENTENCING FACTORS

17.   Defendant and the USAO agree and stipulate that, pursuant to U.S.S.G. §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining the fine for an organization violating statutes related to counts one and fifteen.  Defendant understands that in determining defendant's sentence, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

WAIVER OF CONSTITUTIONAL RIGHTS

18.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant

11

understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

19.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

20.    Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of probation imposed

12

by the Court, provided it is within the statutory maximum; (c) the
fine imposed by the Court, provided it is within the statutory
maximum; and (d) to the extent permitted by law, the
constitutionality or legality of defendant's sentence, provided it is
within the statutory maximum.

21.  The USAO gives up its right to appeal any portion of the
sentence.

22.  Defendant also gives up any right to bring a post-
conviction collateral attack on the convictions or sentence, except a
post-conviction collateral attack based on a claim of ineffective
assistance of counsel, a claim of newly discovered evidence, or an
explicitly retroactive change in the applicable Sentencing
Guidelines, sentencing statutes, or statutes of conviction.
Defendant understands that this waiver includes, but is not limited
to, arguments that the statutes to which defendant is pleading guilty
are unconstitutional, and any and all claims that the statement of
facts provided herein is insufficient to support defendant's pleas of
guilty.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

23.  Defendant agrees that if, after entering guilty pleas
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty pleas on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this

13

1  agreement and the filing commencing any such action; and

2  (ii) defendant waives and gives up all defenses based on the statute

3  of limitations, any claim of pre-indictment delay, or any speedy

4  trial claim with respect to any such action, except to the extent

5  that such defenses existed as of the date of defendant's signing this

6  agreement.

7  <u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

8      24.  Defendant agrees that if any count of conviction is

9  vacated, reversed, or set aside, the USAO may: (a) ask the Court to

10  resentence defendant on any remaining counts of conviction, with both

11  the USAO and defendant being released from any stipulations regarding

12  sentencing contained in this agreement, (b) ask the Court to void the

13  entire plea agreement and vacate defendant's guilty pleas on any

14  remaining count of conviction, with both the USAO and defendant being

15  released from all their obligations under this agreement, or

16  (c) leave defendant's remaining conviction, sentence, and plea

17  agreement intact.  Defendant agrees that the choice among these three

18  options rests in the exclusive discretion of the USAO.

19  <u>EFFECTIVE DATE OF AGREEMENT</u>

20      25.  This agreement is effective upon signature and execution of

21  all required certifications by defendant, defendant's counsel, and an

22  Assistant United States Attorney.

23  <u>BREACH OF AGREEMENT</u>

24      26.  Defendant agrees that if defendant, at any time after the

25  signature of this agreement and execution of all required

26  certifications by defendant, defendant's counsel, and an Assistant

27  United States Attorney, knowingly violates or fails to perform any of

28  defendant's obligations under this agreement ("a breach"), the USAO

14

may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

27. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal

15

Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
Procedure, or any other federal rule, that the statements or any
evidence derived from the statements should be suppressed or are
inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

28.  Defendant understands that the Court and the United States
Probation and Pretrial Services Office are not parties to this
agreement and need not accept any of the USAO's sentencing
recommendations or the parties' agreements to facts or sentencing
factors.

29.  Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 17 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

30.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

31.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///
///
///
///
///
///
///
///
///
///
///
///

17

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

32. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*[signature]*

March 11, 2024

BRITTNEY M. HARRIS                          Date
Assistant United States Attorney

*[signature]*

3. 11, 2024

ESTHER SHAOULIAN, Authorized                 Date
Representative of Defendant

*[signature]*

3/11/2024

EDWARD ROBINSON                              Date
Attorney for Defendant Peticub
Pharmacy Corp.

## CERTIFICATION OF DEFENDANT

I am an authorized representative of defendant Peticub Pharmacy Corp. ("defendant"). I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set

18

1   forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

2   provisions, and of the consequences of entering into this agreement.

3   No promises, inducements, or representations of any kind have been

4   made to me or to defendant other than those contained in this

5   agreement.  No one has threatened or forced me or defendant in any

6   way to enter into this agreement.  I am satisfied with the

7   representation of defendant's attorney in this matter, and I am

8   pleading guilty on behalf of defendant because defendant is guilty of

9   the charges and wishes to take advantage of the promises set forth in

10   this agreement, and not for any other reason.

11

12   _____        3.11.2024

     ESTHER SHAOULIAN, Authorized        Date

13   Representative of Peticub Pharmacy Corp.

14

15

16            CERTIFICATION OF DEFENDANT'S ATTORNEY

17      I am Peticub Pharmacy Corporation's attorney.  I have carefully

18   and thoroughly discussed every part of this agreement with the

19   authorized representative of my client.  Further, I have fully

20   advised my client and its authorized representative of its rights, of

21   possible pretrial motions that might be filed, of possible defenses

22   that might be asserted either prior to or at trial, of the sentencing

23   factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

24   Guidelines provisions, and of the consequences of entering into this

25   agreement.  To my knowledge: no promises, inducements, or

26   representations of any kind have been made to my client other than

27   those contained in this agreement; no one has threatened or forced my

28   client in any way to enter into this agreement; my client's decision

                      19

1  to enter into this agreement is an informed and voluntary one; and

2  the factual basis set forth in this agreement is sufficient to

3  support my client's entry of  guilty pleas pursuant to this

4  agreement.

5

6  EDWARD ROBINSON                              Date
   Attorney for Defendant Peticub
7  Pharmacy Corp.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20